IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CV-166-FL

| | | |
|---|---|---|
| SOCIAL ENTERPRISE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SOUTHERN BELLE ORGANICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

In this breach of contract action, a handful of requests for relief, some apparent and others veiled, come now before the court. Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 15) sits plainly on the docket. Defendant's late filed opposition papers advance its claim that plaintiff is in breach and judgment should be entered in favor of defendant on the subject contract. (DE 26). Plaintiff moves to strike defendant's response on account of its lateness, and because defendant's claimed entitlement to judgment in its response is not a procedurally recognized way to raise that request. (DE 29). Defendant's response to that motion advances a plea that the court excuse for good cause its late filings. (DE 34). Where plaintiff interprets defendant's filings as raising new claims in response to its summary judgment motion, if the court is inclined not to strike its response, plaintiff requests that it be allowed to conduct additional discovery. (DE 30).[1]

---

[1] Plaintiff contends that defendant's counterclaim as pleaded does not reach losses of certain harvests, actual and potential, and costs replacing those harvests, both of which defendant raises in its embedded request for summary judgment, made subsequent the close of discovery August 30, 2021.

## STATEMENT OF THE CASE

Plaintiff is a New York limited liability company ("LLC") engaged in distributing agricultural products. Defendant is a North Carolina LLC in the business of growing and selling produce, including, specifically, blueberries. Plaintiff commenced this action September 9, 2020, asserting defendant breached the parties' "Organic Blueberry Consigned Purchase Agreement" dated January 10, 2018 ("2018 Agreement"), wherein plaintiff agreed to distribute defendant's blueberries and provide defendant a loan, and defendant promised to sell its blueberries to plaintiff and pay back that loan. Plaintiff seeks compensatory damages totaling $94,541.86, interest, and attorneys' fees and costs. Defendant counterclaimed against plaintiff asserting money is owed it under the 2018 Agreement.

Plaintiff filed its motion for summary judgment with reliance upon: 1) affidavit of Rafael Goldberg ("Goldberg"), managing member of plaintiff; 2) the 2018 Agreement; and 3) a table purporting to document certain financial transactions between the parties.

In its opposition to plaintiff's motion, defendant has introduced documentary evidence pertaining to the parties' earlier, similar business dealings including 1) a previous "Organic Blueberry Consigned Purchase Agreement" between the parties; 2) their promissory note seemingly executed January 20, 2016; 3) defendant's records of shipments, insurance policies, sales, expenses, revenue and monies owed it; and 4) correspondence between employees of the parties. Defendant relies also upon 1) a press release by the United States Department of Agriculture; 2) correspondence to defendant's representative from a potential lender; 3) a webpage describing "Actual Production History Yield Exclusion"; and 4) affidavit of Bricklyn W. Rooks ("Rooks"), manager of defendant.

In opposition to plaintiff's motion to strike, defendant also places reliance upon 1) correspondence between counsel; 2) an offer of judgment; and 3) supplemental documentary evidence of the parties' former, similar business dealings.

## STATEMENT OF UNDISPUTED FACTS

The parties entered into the 2018 Agreement on January 10, 2018, which required defendant to supply plaintiff with the entire output of blueberries grown for harvest in 2018, 2019, 2020, 2021, and 2022, at two of defendant's North Carolina-based farms. (Def.'s Opp. Stmt. (DE 24) ¶¶ 2, 4).[2] Defendant was obligated to provide at least 300,000 pounds but not more than 2,000,000 pounds of product annually. (Id. ¶ 5). In turn, plaintiff agreed to sell the blueberries and pay defendant the amount received for the sale, minus an eight percent fee if more than 500,001 pounds had been delivered or a nine percent fee if less than 500,000 pounds had been delivered. (Id.). Defendant consented to pay eight cents per pound of blueberries delivered for marketing and developing expenses incurred by plaintiff and another eight cents per pound of blueberries delivered as a "certification premium" for plaintiff's "Taste Me Do Good" certification. (Id.). The 2018 Agreement defines the amount owed defendant after these described deductions as the "Net Purchase Price." (2018 Agreement (DE 16-2) at 5).

Plaintiff was required to pay $0.55 per pound of "deliver[ed]" or "pick[ed] up" blueberries within seven days of such as "advance payment." (Def.'s Opp. Stmt. (DE 24) ¶ 5). It also, under the 2018 Agreement, promised to loan annually $235,000.00 to defendant with an interest rate of eight percent per annum compounded daily, or, upon default, 12% per annum compounded daily.

---

[2] Where a fact asserted in plaintiff's statement of material facts is undisputed, the court cites to defendant's responsive statement of facts, where it indicates the fact is admitted, undisputed, or without opposing fact, irrespective of the merits of plaintiff's argument that defendant's responsive filings to the motion for summary judgment are untimely.

(2018 Agreement (DE 16-2) at 4). The loan was to be distributed during each contract year in installments of $45,000.00 in November, $35,0000.00 in December, $60,000.00 in January, $60,000.00 in February, and $35,000.00 in March.[3] (Id.). However, the Net Purchase Price as owed to defendant by plaintiff, rather than go to defendant, was required first to "be applied to the balance due and owing on [the contemporaneously entered promissory note] and any and all" advance payments made by plaintiff. (2018 Agreement (DE 16-2) at 4).[4] The parties agreed that the full amount of the annual loan would "become immediately due and payable in full" "[i]f, upon the yearly anniversary of [January 10, 2018], . . . the [annual loan] . . . is not paid in full" under the payment terms described above. (Id. at 6).

Between January 10, 2019, and January 10, 2020, plaintiff disbursed $200,000.00 in nine installments to defendant. (See Def.'s Opp. Stmt. (DE 24) ¶¶ 11-12). The disbursements accrued interest in the amount of $8,599.89. (Id. ¶ 13). The Net Purchase Price for blueberries produced by defendant and sold by plaintiff between January 10, 2019, and January 10, 2020, was $118,893.58. (Id. ¶ 14). Additional interest accrued on the loan and on advance payments between January 2, 2020, and May 31, 2020, resulting in $11,335.44 in total interest being due as of May 31, 2020. Defendant has not paid any of the $94,541.86 balance allegedly due, calculated as of May 31, 2020.[5]

---

[3] The 2018 Agreement contradictorily references "four" installments before proceeding to describe five installments during the year.

[4] No evidence has been placed in the record of this contemporaneously entered promissory note discussed in the 2018 Agreement, and defendant contends that the only promissory note entered into by the parties was in 2016, coupled with a previous contract.

[5] This amount represents the disbursed $200,000.00 less the $118,893.58 Net Purchase Price plus the $11,335.44 in interest and $2,100.00 in incidental costs.

4

# COURT'S DISCUSSION

A.     Plaintiff's Motion to Strike and Related Issues

Plaintiff has moved to strike defendant's response to plaintiff's motion for summary judgment on the bases that the filings are untimely under the local civil rules and the embedded request for summary judgment in defendant's favor is procedurally defective and late. Defendant advances in response cause why its filings were late and seeks them to be considered.

Plaintiff filed the instant motion for summary judgment October 15, 2021, the deadline for dispositive motions. Under Local Civil Rule 7.1(f), defendant had until November 5, 2021, to respond. Defendant filed documents responsive to plaintiff's motion out of time, on November 17, 2021, which documents were refiled later in corrected form.

Rule 6 permits the court to extend, for good cause, the time for an act to be completed upon a "motion made after the time" in which the movant was supposed to act "has expired if the party failed to act because of excusable neglect," Fed. R. Civ. P. 6(b)(1), that is, a motion to extend an already expired deadline requires a showing of good cause and excusable neglect. Similarly, a scheduling order, and its enumerated deadlines, "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). And where the request to modify the scheduling order's deadlines comes after the expiration of that deadline, excusable neglect must, too, be shown. See Fed. R. Civ. P. 6(b)(1); see, e.g., Tyndall v. Maynor, 288 F.R.D. 103, 110 (M.D.N.C. 2013).

Good cause is a flexible concept dependent on the circumstances of each case, but the United States Court of Appeals for the Fourth Circuit has repeatedly held that the term properly focuses on the reason given by the tardy movant. See, e.g., Collins v. Thornton, 782 F. App'x 264, 267 (4th Cir. 2019) ("What constitutes 'good cause' for purposes of Rule 4(m) necessarily is determined on a case-by-case basis within the discretion of the district court."); Montgomery v.

5

Anne Arundel County, 182 F. App'x 156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party."); Robinson v. G D C, Inc., 193 F. Supp. 3d 577, 580 (E.D. Va. 2016) (collecting cases applying similar factors to the court's Rule 6(b)(1) analysis).[6]

Similarly, "excusable neglect" is an inherently "flexible" term. See Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 533 (4th Cir. 1996). The Supreme Court has explained that the factors in determining whether a party's neglect is excusable are: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); In re MI Windows & Doors, Inc., Prod. Liab. Litig., 860 F.3d 218, 226 (4th Cir. 2017). "No factor is dispositive," In re MI Windows, 869 F.3d at 226, but "inadvertence, ignorance of the rules, . . . mistakes construing the rules," id., a lack of diligence, Robinson v. Wix Filtration Corp., LLC, 599 F.3d 403, 413 (4th Cir. 2010), or failure to provide a plausible explanation for the delay, B & G Bldg. Maint., Inc. v. NLRB, 123 F. App'x 551, 553 (4th Cir. 2005), typically do not satisfy the excusable neglect standard. See, e.g., Symbionics Inc. v. Ortlieb, 432 F. App'x 216, 219 (4th Cir. 2011) ("[A] mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing for excusable neglect."); see also Martinez v. United States, 578 F. App'x 192, 194 n.* (4th Cir. 2014) ("Excusable neglect generally has the same meaning throughout the federal procedural rules."). At base, "[e]xcusable neglect is not easily demonstrated." Thompson, 76 F.3d at 533.

---

[6] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

Defendant's explanation for the late responsive filings attributes the error to defense counsel's employee's mistake in calendaring the response time as 30 days rather than 21 days, which counsel did not discover ostensibly until November 12, 2021, after the 21-day response period had elapsed. This justification would explain a delay until November 15, 2021, in responding, not November 17, 2021, when the filings were actually made. Defendant has offered no reason for its delay in seeking an extension of time until plaintiff brought the issue to the fore in its motion to strike.

Defendant is skating on thin ice to behave as it has. However, this court must conclude plaintiff is not entitled to summary judgment as a matter of law on the strength of its own filings. And assuming without deciding that some kernel of good cause and excusable neglect lies in the ground of this case for defendant's late filings, nor would it be entitled to judgment. This is a case headed to trial.

B.   Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over

7

facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2. Analysis

a. Plaintiff's Breach of Contract Claim

Although plaintiff presumes North Carolina law controls the 2018 Agreement and defendant provides no citation to law, of any state, substantively controlling the contract, the court is presented preliminarily with the question of what state law controls plaintiff's breach of contract claim where the contract itself mandates application of New York law. (2018 Agreement (DE 18-2) at 6).

As a federal district court sitting in diversity jurisdiction, the court applies the choice of law principles of the forum state, North Carolina. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Despite North Carolina's adherence to the presumptive rule of lex loci contractus, contracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir. 2004); Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262 (1980). However, if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue," North Carolina courts decline to honor the choice of law provision. Volvo Const., 386 F.3d at 603; see also Johnston Cnty. v. R.N. Rouse & Co., 331 N.C. 88, 93 (1992) (citing Restatement (Second) of Conflict of Laws §§ 186, 187 (Am. L. Inst. 1971))).

Here, plaintiff, as a New York company, has a substantial relationship to New York. See, e.g., Cable Tel Servs., Inc. v. Overland Contracting, Inc., 154 N.C. App. 639, 643-44 (2002) (analyzing contrasting situation in which contractual party "ha[d] never engaged in business of

9

any kind in [the chosen state], [was] not licensed or registered to conduct business in the [chosen state,] and ha[d] never knowingly entered into any contracts with any person or entity in [chosen state]"). Further, the instant provision resembles the kind North Carolina courts have found valid without examination of any specific, potentially contrary, public policy. See, e.g., Perkins v. CCH Computax, Inc., 333 N.C. 140, 144 (1992).[7]

Thus, the court concludes that North Carolina choice of law principles require application of New York substantive law to plaintiff's breach of contract claim.

In order to establish breach of contract under New York law, "a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011); Guzman v. Ramos, 139 N.Y.S.3d 648, 651 (N.Y. App. Div. 2021) ("The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."). Where the parties' contract "concerns the purchase, sale and distribution of goods, the New York Uniform Commercial Code . . . applies." Bausch & Lomb Inc. v. Bressler, 977 F.2d 720, 726 (2d Cir. 1992); see also N.Y. U.C.C. § 2-101 et seq. (McKinney 2022). A promissory note may fall within the New York Uniform Commercial Code's ambit, if it constitutes a "negotiable instrument," N.Y. U.C.C. § 3-104, and, certain secured transactions may also be covered. Id. § 9-109. Each may be

---

[7] Although the same clause also selects the forum for disputes as "the state and federal courts located in Kings County, New York," (2018 Agreement (DE 16-2) at 6), both parties have seemingly waived the right to enforce that contractual provision. See, e.g., Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001).

a component of a larger contract.  See, e.g., 41-41 51st St. Realty Assocs. v. Tura Assocs., 616 N.Y.S.2d 73, 74 (N.Y. App. Div. 1994); cf. N.Y. U.C.C. § 2-401(1).

Here, either as a matter of general New York contract law or the New York Uniform Commercial Code ("N.Y. U.C.C."), there is no genuine dispute based on the record currently before the court that, irrespective of defendant's alleged breach of the contract, plaintiff did not perform its loan obligations under the 2018 Agreement and, therefore, cannot satisfy an essential element of its breach of contract claim.

The New York Court of Appeals has recognized the legal principle of "substantial performance." E.g., Nieman-Irving & Co. v. Lazenby, 188 N.E. 265, 266 (N.Y. 1933); see also Maxton Builders, Inc. v. Lo Galbo, 502 N.E.2d 184, 187 (N.Y. 1986) (describing the general rule under New York law that "a party who defaults on a contract cannot recover the amount or value of part performance").[8] Under that principle, a plaintiff may still recover for a defendant's breach of a contract, despite plaintiff's technical breach of that same contract, if plaintiff has substantially performed its contractual obligations. See, e.g., Turk v. Look, 383 N.Y.S.2d 937, 939 (N.Y. App. Div. 1976); Witherell v. Lasky, 145 N.Y.S.2d 624, 627 (N.Y. App. Div. 1955).  Substantial performance requires that plaintiff's deviations are "minor, unimportant, inadvertent, and unintentional." Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc., 821 F.3d 297, 312 (2d Cir. 2016); Carefree Bldg. Prod., Inc. v. Belina, 564 N.Y.S.2d 852, 853 (N.Y. App. Div. 1991) ("In order to recover for substantial performance, the plaintiff must establish that its failure to perform was inadvertent or unintentional and that the defects were insubstantial."). As a final

---

[8] The U.C.C. is, as a general matter, even less forgiving of deficient performance unless the offending party complies with certain statutory provisions. See, e.g., T.W. Oil, Inc. v. Consol. Edison Co. of N.Y., 443 N.E.2d 932, 937 (N.Y. 1982); N.Y. U.C.C. § 2-106 cmt. 2.

matter, "[t]he question of substantial performance is usually one of fact and should be decided as a matter of law only where the inferences are certain." Bank of N.Y. Mellon, 821 F.3d at 312.

Here, the 2018 Agreement obligates plaintiff to provide an "annual loan in the amount of . . . $235,000[] ('Loan') to [defendant]," advanced to defendant in the form of installments in the amount of $45,000.00 in November, $35,000.00 in December, $60,000.00 in January, $60,000.00 in February, and $35,000.00 in March of each year (constituting in total the $235,000.00).[9] (2018 Agreement (DE 16-2) at 4). Plaintiff, on its own records, did not do so. During 2019, it advanced $20,000.00 in January ($40,000.00 less than required), $20,000.00 in February ($40,000.00 less than required), $30,000.00 in March ($5,000.00 less than required), $70,000.00 in April (leaving defendant with $15,000.00 less than required at that point in the year), and $60,000.00 in May, failing to advance any money the rest of year including in November and December as contracted. (Table of Transactions (DE 16-3) at 1). In total, as plaintiff admits, this only totals $200,000.00, $35,000.00 less than the contractual amount of the annual loan. (Pl.'s Stmt. (DE 17) ¶¶ 6, 11).

Under the 2018 Agreement, on January 10 of each year, if the "Loan . . . is not paid in full . . . , any and all amounts due and owing under . . . the Loan . . . shall then become immediately due and payable in full," as reduced by the amount of payments of the Net Purchase Price that otherwise would have gone to defendant. (2018 Agreement (DE 16-2) at 5-6). While plaintiff asserts that defendant breached this provision by failing to pay to it $94,541.86 on January 10, 2020, prior to that date, it had not performed its obligation to advance a loan of $250,000.00 to defendant, in the time, amounts, or total value promised. Even assuming the variances from the

---

[9] As noted above, there is no evidence of a promissory note, "contemporaneously" entered-into with the 2018 Agreement, and defendant contends that no such note was executed. Regardless, for the purposes of resolving this motion, plaintiff's breach of contract claim fails on application of the requirements of 2018 Agreement, alone, to the undisputed facts.

12

installment plan enumerated by the 2018 Agreement could be considered minor, failure to provide almost one-fifth of the amount of loan promised cannot be said, especially taking inferences in favor of the non-movant, to be unimportant or insubstantial. Further, plaintiff provides no explanation for this failure, leaving the court unable to conclude that the failure to perform fully was inadvertent or unintentional. Thus, on the undisputed facts proffered by plaintiff itself, it has not performed substantially as would excuse its failure to perform completely its obligations under the 2018 Agreement.

In sum, plaintiff has failed to demonstrate that it is entitled to judgment on its breach of contract claim as a matter of law where on the undisputed, material facts, it has not evidenced an essential element of that claim. Accordingly, the court denies its motion for summary judgment.

As to defendant's late plea for summary judgment in its favor on its counterclaim, with scope allegedly expanded from its pleading, defendant has not demonstrated it is due judgment as a matter of law on the undisputed, material facts. As noted, the court would first have to assume defendant's excuse laying blame on defense counsel's employee and its assumptions as to plaintiff's non-prosecution offered a kernel of good cause and excusable neglect for the month-late request for summary judgment. Even then, the court cannot say, on the record before it, that defendant has demonstrated there is no genuine dispute of material fact as to whether it sufficiently has performed its obligations under the contract, an essential element, too, of its breach of contract counterclaim. Diesel Props, 631 F.3d at 52. For example, there is dispute as to whether it, in fact, performed its loan obligations to the degree required, which it seeks to justify via reference to promissory note not explicitly incorporated into the 2018 Agreement, and as to whether any breach by plaintiff was material as would excuse potentially any later nonperformance by defendant. See Orlander v. Staples, Inc., 802 F.3d 289, 298 (2d Cir. 2015) ("[T]he question of the materiality of

13

a breach is usually a question of fact and should be decided as a matter of law only where the inferences are certain.").

C.  Scheduling Matters

This case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The court notices telephonic Rule 16(a) conference for Thursday, September 15, 2022, at 10:00 a.m. during which particular pretrial issues which may require court intervention in advance of trial, if any; and a trial date certain will be discussed.

The court notes mediation was to have occurred by August 30, 2021, the deadline for close of discovery, see Local Alternative Dispute Resolution Rule 101(b), and no showing has been offered by the parties as to the status of same. At Rule 16(a) conference the parties may reasonably expect the topic of mediation or some other alternative dispute resolution technique will be considered.

## CONCLUSION

For reasons given, plaintiff's motion to strike (DE 29) is denied as moot. Plaintiff's motion for summary judgment (DE 15) must be and is denied. Nor would defendant be entitled to any judgment as a matter of law if such motion properly was before this court. Rule 16(a) telephonic conference is noticed here, for September 15, 2022. Trial responsible counsel must be in attendance with necessary calendaring information then available.

SO ORDERED, this the 6th day of September, 2022.

LOUISE W. FLANAGAN
United States District Judge